**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MICHAEL WYSE, as Plan Administrator for the Voyager Wind-Down Debtor,<br><br>Plaintiff,<br><br>v.<br><br>MARIA MARIN, *et al.*,<br><br>Defendants. | No. 26cv541 (EP) (JBC)<br><br>**MEMORANDUM ORDER** |

**PADIN, District Judge.**

Voyager Digital, LLC ("Voyager") was a cryptocurrency brokerage platform that filed for Chapter 11 bankruptcy in July 2022 and whose assets and claims are now administered under a court-confirmed wind-down plan.[1] In this action, Plaintiff Michael Wyse, as Plan Administrator for the Voyager Wind-Down Debtor, brings breach of contract and breach of indemnity claims against Defendants, nineteen Voyager customers.[2] Plaintiff alleges that Defendants all deposited funds with Voyager, used those funds to purchase cryptocurrency, transferred cryptocurrency off Voyager's platform, and then initiated chargebacks that reversed the deposits used to fund those purchases.[3]

---

[1] D.E. 1 ("Complaint" or "Compl.") ¶¶ 13–15, 35, 60.

[2] *See generally id.*

[3] *Id.* ¶¶ 1–7, 46–63, 64–78.

Defendants Maria Acevedo and Nelly Martin, both proceeding *pro se*, have moved to compel arbitration and stay Plaintiff's claims against them.[4] According to Defendants, Plaintiff's claims fall within the scope of an arbitration agreement contained within a customer agreement they accepted as a condition of opening their Voyager accounts.[5] Plaintiff disagrees.

Although the parties ask this Court to decide whether Plaintiff's claims are arbitrable, the Court must answer a threshold question first: who determines whether Plaintiff's claims even fall within the substantive scope of the Customer Agreement's arbitration provision?

The Agreement expressly gives the arbitrator "exclusive authority" to decide the arbitration agreement's "scope" and "arbitrability."[6] Plaintiff does not dispute that Acevedo and Martin accepted the Customer Agreement. Nor does Plaintiff specifically challenge the Agreement's delegation provision. In these circumstances, controlling Third Circuit law requires the arbitrator—not this Court—to decide the parties' scope dispute.

The Court will therefore **GRANT** both Motions, **COMPEL** the parties to submit the arbitrability question to arbitration, and **STAY** Plaintiff's claims against Acevedo and Martin pending arbitration.

---

[4] D.E. 98 ("Acevedo Motion" or "Acevedo Mot."); D.E. 99 ("Martin Motion" or "Martin Mot.") (together, the "Motions"). Plaintiff filed a single omnibus opposition to the Motions. D.E. 105 ("Opposition" or "Opp'n"). The Court decides the Motions without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).

[5] Compl., Ex. 1 (herein, the "Customer Agreement" or "Agreement").

[6] Customer Agreement § 27.

# I. BACKGROUND[7]

## A. Plaintiff's Allegations

Voyager operated a cryptocurrency brokerage platform through which customers could purchase, hold, and transfer cryptocurrency. Compl. ¶¶ 35–39. Plaintiff alleges that each Defendant created a Voyager account in May or June 2022 and, as a condition of opening an account, accepted the Customer Agreement by checking a box indicating consent to its terms. *Id.* ¶¶ 40, 43. Plaintiff further alleges that all Defendants accepted the same version of the Customer Agreement. *Id.* ¶ 10 n.2.

After opening their Voyager accounts, Defendants allegedly funded them through deposits from third-party banks and used the deposited funds to purchase cryptocurrency on the Voyager platform. *Id.* ¶¶ 50–51. Defendants then transferred much of that cryptocurrency off-platform before disputing the underlying bank deposits as unauthorized and obtaining "chargebacks" that returned the deposited funds to their banks. *Id.* ¶¶ 52–58. Because those chargebacks occurred within sixty days of the deposits, the chargebacks were processed automatically, leaving Voyager unable to recover either the transferred cryptocurrency or the funds used to purchase it. *Id.* ¶¶ 48–49, 56–58. On that basis, Plaintiff asserts claims for breach of the Customer Agreement's funding requirements and for breach of the Agreement's indemnification provisions. *Id.* ¶¶ 64–78.

## B. The Customer Agreement

Section 26 of the Customer Agreement addresses "Questions; Feedback; Complaints." It provides that "[i]f Customer has a complaint or dispute with Voyager in connection with the

[7] As explained below, the Court decides the Motions under the standard of review set forth in Federal Rule of Civil Procedure 12(b)(6). Accordingly, the court "accept[s] as true the factual allegations set forth in the Complaint" and "consider[s] the substance of the contracts that ostensibly compel arbitration." *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 168 n.2 (3d Cir. 2014) (applying the 12(b)(6) standard to a motion to compel arbitration where the arbitration clause at issue appears in a contract relied upon in the Complaint).

Services (a 'Complaint')," the Customer must first contact Voyager through its support process. Customer Agreement § 26. If that process does not resolve the Complaint to the Customer's satisfaction, "the Customer may require that Customer and Voyager pursue any unresolved Complaint (or portion thereof) through arbitration, consistent with the terms of Section 27." *Id.*

Section 27, titled "Arbitration Agreement," provides that Voyager and the Customer will first attempt to resolve "any Complaint arising in connection with this Agreement, the Account, the Platform, or the Services" informally and that an unresolved Complaint "shall be finally and exclusively resolved in binding arbitration" administered by the American Arbitration Association. *Id.* § 27 (herein, "Section 27" or "the Arbitration Provision"). Section 27 then contains the following delegation provision:

> THE ARBITRATOR SHALL ALSO HAVE EXCLUSIVE AUTHORITY TO DECIDE ANY ISSUES RELATING TO THE MAKING, VALIDITY, ENFORCEMENT, OR SCOPE OF THIS ARBITRATION AGREEMENT, ARBITRABILITY, DEFENSES TO ARBITRATION INCLUDING UNCONSCIONABILITY, OR THE VALIDITY OF THE JURY TRIAL OR CLASS ACTION WAIVERS.

*Id.* The provision further provides that New Jersey state or federal courts have exclusive jurisdiction over appeals from arbitration awards and "over any lawsuit between the parties not subject to arbitration." *Id.*

### C. The Motions

Both Acevedo and Martin assert that Plaintiff's claims against them are arbitrable because they arise from account activity and transactions governed by the Customer Agreement. Acevedo Mot. at 3–4; Martin Mot. at 2–3. Both therefore ask the Court to compel arbitration. Acevedo Mot. at 5; Martin Mot. at 3.

Plaintiff opposes the Motions. Opp'n at 1. Plaintiff does not dispute that Acevedo and Martin maintained Voyager accounts subject to the Customer Agreement or that they accepted its

terms, including the Arbitration Provision. *Id.* at 2–3. Instead, Plaintiff argues that Sections 26 and 27 of the Agreement create a narrow arbitration obligation covering only a customer's complaint or dispute with Voyager—and therefore do not reach claims initiated by Voyager against a customer. *Id.* at 6–9. Plaintiff also points to Section 27's grant of jurisdiction over lawsuits "not subject to arbitration" as evidence that the parties did not agree to arbitrate every dispute. *Id.* at 8. Plaintiff asks the Court to decide that scope question and deny the Motions. *Id.* at 9.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that written arbitration agreements in contracts involving commerce are "valid, irrevocable, and enforceable," and subject to generally applicable contract defenses. 9 U.S.C. § 2. A party may petition a federal court to compel arbitration in accordance with the parties' agreement. *Id.* § 4. If an issue is referred to arbitration and a party requests a stay, Section 3 requires the court to stay the judicial proceeding pending arbitration. *Id.* § 3.

Ordinarily, a court considering a motion to compel asks "(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 527 (3d Cir. 2009) (citation omitted). The second question, however, belongs to the arbitrator when the parties clearly and unmistakably delegate arbitrability. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67, 69 (2019). Put simply, when a valid arbitration agreement delegates arbitrability to the arbitrator, "a court may not decide the arbitrability issue." *Id.* at 69.

Nevertheless, before delegating the issue, a court must still determine whether an agreement to arbitrate was formed in the first place. *MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 397–99 (3d Cir. 2020). If formation is established, a party seeking a judicial ruling on arbitrability must specifically challenge the delegation provision itself. *Zirpoli v. Midland Funding, LLC*, 48 F.4th 136, 144 (3d Cir. 2022). But if a party challenges only an agreement's scope—and the agreement clearly delegates issues of scope to the arbitrator—"nothing is left for the District Court to decide pursuant to the FAA." *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 321–22 (3d Cir. 2024).

When the complaint and documents on which it relies show that the parties agreed to arbitrate, the court may decide a motion to compel arbitration under Rule 12(b)(6) without additional discovery. *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (explaining that limited discovery is warranted only when the pleadings are unclear about formation or the party resisting arbitration comes forward with facts placing formation in issue). Because the Customer Agreement is attached to the Complaint and Plaintiff does not dispute assent, the Court may decide the Motions without additional discovery.

## III. DISCUSSION

The parties' briefs focus on the substantive reach of Sections 26 and 27. Defendants read the Arbitration Provision broadly because Plaintiff's claims arise from their Voyager accounts, transactions, and use of Voyager's services. Acevedo Mot. at 3–4; Martin Mot. at 2–3. On the other hand, Plaintiff reads Section 27 narrowly because the defined term "Complaint" refers to a Customer's complaint or dispute with Voyager, rather than a dispute initiated by Voyager against a Customer. Opp'n at 6–9.

Before resolving that textual dispute, the Court must determine who the parties agreed would construe the Arbitration Provision's scope. As explained below, the Agreement clearly delegates that authority to the arbitrator.

**A. The Existence of an Arbitration Agreement Is Not in Dispute**

There is no dispute that Acevedo and Martin entered the Customer Agreement containing the Arbitration Provision. Acevedo asserts that she maintained a Voyager account subject to the Customer Agreement and accepted its terms, including the Arbitration Provision. Acevedo Mot. at 3–4. Martin likewise identifies the Customer Agreement as "the parties' contract" and relies on Section 27 as a valid arbitration agreement. Martin Mot. at 2–3. Plaintiff's own Complaint alleges that each Defendant accepted the Customer Agreement by checking a box during Voyager's onboarding process and pleads that the Customer Agreement is "a valid and legally enforceable contract between Voyager and each Defendant." Compl. ¶¶ 43, 65. Plaintiff's Opposition likewise treats the Customer Agreement as the parties' contract and expressly acknowledges that Acevedo and Martin maintained accounts subject to it and accepted its terms, including the Arbitration Provision. Opp'n at 2–3.

Because the "making of the agreement for arbitration . . . is not in issue," 9 U.S.C. § 4, no further inquiry into formation is required, *MZM*, 974 F.3d at 397–99. Accordingly, the Court will turn to delegation.

### B. The Arbitrator, Not the Court, Must Decide the Parties' Scope Dispute[8]

With formation out of the way, the next question is delegation. The Customer Agreement's Arbitration Provision provides as follows:

> **THE ARBITRATOR SHALL ALSO HAVE EXCLUSIVE AUTHORITY TO DECIDE ANY ISSUES RELATING TO** THE MAKING, VALIDITY, ENFORCEMENT, OR SCOPE OF THIS ARBITRATION AGREEMENT, **ARBITRABILITY**, DEFENSES TO ARBITRATION INCLUDING UNCONSCIONABILITY, OR THE VALIDITY OF THE JURY TRIAL OR CLASS ACTION WAIVERS.

Customer Agreement § 27 (emphases added).

The Arbitration Provision plainly gives the arbitrator "exclusive authority" to decide any issues relating to the making, validity, enforcement, or scope of this arbitration agreement, including the issue of arbitrability. That language is clear and unmistakable: questions of scope and arbitrability are for the arbitrator. *Zirpoli*, 48 F.4th at 144–45.

As noted above, Plaintiff does not challenge that delegation provision. Its objection instead concerns the Agreement's scope—*i.e.*, that Plaintiff's affirmative claims do not qualify as a "Complaint" under Sections 26 and 27 because that defined term refers to a Customer's complaint or dispute with Voyager. Opp'n at 6–9. But that argument goes to the Arbitration Provision's scope, something the delegation provision authorizes the arbitrator to decide.

In this context, *Young* controls. There, the plaintiff challenged the arbitration agreement's scope while the agreement delegated scope and enforceability to the arbitrator. The Third Circuit held that, because formation was not disputed, "nothing is left for the District Court to decide pursuant to the FAA." *Young*, 119 F.4th at 321–22. The same is true here. There is no dispute as

[8] Although Defendants do not invoke the delegation provision, that does not prevent the Court from applying an operative term of the contract they ask it to enforce. *See Adler v. Gruma Corp.*, 135 F.4th 55, 77–78 (3d Cir. 2025) (holding that a district court does not abuse its discretion by identifying and applying a delegation clause in an arbitration provision even though the movants had not relied on delegation).

to formation and no party challenges delegation; rather, they ask the Court to decide whether Plaintiff's claims fit within the arbitration provision of the Customer Agreement. Under *Young* and *Zirpoli*, that question belongs to the arbitrator. *See Young*, 119 F.4th at 321–22; *Zirpoli*, 48 F.4th at 144–45.

Plaintiff's reliance on Section 27's reference to New Jersey courts does not change the result. The Agreement provides jurisdiction over a lawsuit "not subject to arbitration." Customer Agreement § 27. While that language confirms some disputes may fall outside the Arbitration Provision's scope, it does not identify who decides whether a particular dispute is one of them. The delegation provision answers that question by expressly giving the arbitrator "exclusive authority" over disputes concerning "scope" and "arbitrability." *Id.*

This Court's recent decision in *Rodriguez-Ocasio v. MHC Receivables LLC* reinforces the same division of authority. There, after finding a valid arbitration agreement and no specific challenge to the delegation clause, this Court determined that it "may not decide the issue of arbitrability." No. 24-6493, 2026 WL 1803150, at *10 (D.N.J. June 23, 2026). The same division applies here: formation is for the Court; delegated scope is for the arbitrator. Accordingly, the Court does not reach the parties' competing readings of "Complaint" in the Customer Agreement. The parties may present those arguments to the arbitrator. This Court decides only that the parties agreed the arbitrator would resolve that dispute.

### C. Proceedings Against Acevedo and Martin Will Be Stayed

Both Acevedo and Martin request a stay pending arbitration. Acevedo Mot. at 5; Martin Mot. at 3. Once the Court compels arbitration and a party requests a stay, Section 3 of the FAA leaves no discretion to dismiss the arbitrable claims instead. *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). The Court will therefore stay Plaintiff's claims and all proceedings against Acevedo and

Martin pending arbitration. The stay does not extend to Plaintiff's claims against any nonmoving Defendant.

## IV. CONCLUSION AND ORDER

For the reasons stated above,

**IT IS** on this 30th day of September 2026,

**ORDERED** that Defendant Maria Acevedo's Renewed Motion to Compel Arbitration and to Stay Proceedings, D.E. 98, is **GRANTED** as to Plaintiff's claims against her; and it is further

**ORDERED** that Defendant Nelly Martin's Motion to Compel Arbitration and to Stay Proceedings, D.E. 99, is **GRANTED** as to Plaintiff's claims against her; and it is further

**ORDERED** that Plaintiff and Defendants Maria Acevedo and Nelly Martin shall submit to arbitration the question whether Plaintiff's claims against them are arbitrable under Section 27 of the Customer Agreement and, if the arbitrator determines they are, the merits of those claims; and it is further

**ORDERED** that within **14 days** of the arbitrator's determination whether Plaintiff's claims against Defendants Maria Acevedo and Nelly Martin are arbitrable, the parties shall file a joint letter advising the Court of that determination and proposing appropriate next steps; and it is further

**ORDERED** that, if the arbitrator determines that Plaintiff's claims are arbitrable, the parties shall, within **14 days** after completion of the arbitration, file a joint letter advising the Court of the disposition of the arbitration and whether any further proceedings in this action are necessary; and it is further

**ORDERED** that Plaintiff's claims and all proceedings against Defendants Maria Acevedo and Nelly Martin are **STAYED** pending the arbitrator's determination of arbitrability and, if the

arbitrator determines that Plaintiff's claims are arbitrable, completion of arbitration on the merits, and further Order of the Court; and it is finally

**ORDERED** that the stay does not extend to Plaintiff's claims against any nonmoving Defendant.

Evelyn Padin, U.S.D.J.